NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RENÉ D. EDWARDS,

                Plaintiff,

       v.

STATE OF NEW JERSEY *et al.*,

            Defendants.

Civ. No. 20-7427

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Refund the Filing Fee (ECF No. 5), Application to Proceed *In Forma Pauperis* (ECF No. 6), and Motions for Leave to Amend the Complaint (ECF Nos. 9, 12, 13) filed by Plaintiff Rene Edwards ("Plaintiff"); the Motion to Dismiss filed by Defendants State of New Jersey, Governor Phil Murphy, New Jersey Attorney General Gurbir Grewal, Former First Assistant Prosecutor Dana Petrone, Deputy Attorney General Meliha Arnautovic, the Honorable Irvin J. Snyder ("Judge Snyder"), Assistant District Parole Supervisor James Gahm, and Assistant District Parole Supervisor Andrew LaRue (collectively, "State Defendants") (ECF No. 7); and the Motion to Dismiss filed by Defendant Greenblatt, Pierce, Funt & Flores, LLC ("Greenblatt") (ECF No. 8). The Court has decided these Motions based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Plaintiff's Motion to Refund the Filing Fee is denied, Plaintiff's Application to Proceed *In Forma Pauperis* is granted, the Motions to Dismiss are granted, and the Motions for Leave to Amend the Complaint are denied.

1

## BACKGROUND

On June 18, 2020, Plaintiff filed the Complaint against State Defendants, Defendant Greenblatt, Parole Officer Ronald Berreman, and the Honorable Noel L. Hillman ("Judge Hillman"). (ECF No. 1.) The Complaint is disjointed and difficult to follow.[1] It appears that approximately forty years ago, Plaintiff was convicted of an offense in New Jersey state court that triggered Megan's Law. (Compl. at 6–7, 23, ECF No. 1.)[2] Based on that conviction, New Jersey's Sex Offender Monitoring Act ("SOMA"), enacted in August 2007, required Plaintiff to wear a GPS monitoring device. (*Id.* at 55.) Plaintiff was later arrested and pleaded guilty to failure to comply with the GPS monitoring requirement. It appears that Defendant Petrone prosecuted the case before Defendant Judge Snyder. (*Id.* at 19–21, 46.) During his incarceration, Plaintiff alleges that he was raped by fellow prisoner(s) and corrections officer(s). (*Id.* at 9–11.) In September 2014, the New Jersey Supreme Court held that the GPS requirement under SOMA did not apply to defendants who committed the underlying offense prior to the effective date of the Act. *Riley v. N.J. State Parole Bd.*, 98 A.3d 544, 560 (N.J. 2014). Based on this ruling, Plaintiff was granted post-conviction relief. (Compl. at 55.)

In September 2016, Plaintiff filed a separate case in this District against Defendants Petrone, Gahm, and LaRue. *See Edwards v. Gahm*, 2018 WL 5669166 (D.N.J. Nov. 1, 2018). Plaintiff asserted claims alleging false arrest, false imprisonment, and malicious prosecution in violation of the Fourth and Fourteenth Amendment, largely based on the same set of facts as the present case. *Id.* at *1–2. Plaintiff asserted that the defendants had wrongly arrested and

---

[1] A section of the Complaint appears to be an undated excerpt of a brief for Plaintiff's appeal of the state court's denial of his petition for post-conviction relief. (Compl. at 22–45.)

[2] The page numbers to which the Court refers when citing this document are the CM/ECF page numbers.

2

prosecuted him for his failure to comply with SOMA's GPS monitoring requirements because he should not have been subjected to those requirements under *Riley*. *Id.* at *2. Defendant Arnautovic represented Defendants Petrone, Gahm, and LaRue in the proceedings. (*See* Civ. No. 16-5702.) Judge Hillman dismissed the case, finding that the defendants were immune from suit and, even if the defendants did not have immunity, Plaintiff had failed to state a claim. *Gahm*, 2018 WL 5669166, at *5–6. Judge Hillman also noted that Plaintiff had already filed eleven other actions in this District "arising out of his GPS monitoring and what occurred while he was incarcerated due to the SOMA violation charge." *Id.* at *10 n.8 (collecting cases).

The present Complaint alleges the following counts: (i) violations of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; (ii) cruel and unusual punishment; (iii) illegally forcing Plaintiff to wear a GPS tracking device without a court order; (iv) discrimination on the "grounds of sex, race, [c]reed, religion, sexual preference, and" alleged prior charges; (v) illegal seizure of Plaintiff; and (vi) false arrest, false imprisonment, and malicious prosecution in violation of N.J. Stat. Ann. § 2C:13-3. (Compl. at 46–50, ECF No. 1.) Plaintiff seeks compensation for lost salary and benefits for the three years that he was imprisoned as well as damages for future lost salary and emotional pain and suffering. (*Id.* at 56.)

On June 24, 2020, Plaintiff paid the $400.00 filing and administrative fees. On July 13, 2020, Plaintiff filed a Motion to Refund the Filing Fee (ECF No. 5) and an Application to Proceed *In Forma Pauperis* (ECF No. 6). On July 21, 2020, State Defendants filed a Motion to Dismiss (ECF No. 7), and Defendant Greenblatt filed a separate Motion to Dismiss (ECF No. 8). Plaintiff has not opposed either Motion, but instead has filed three Motions for Leave to Amend the Complaint. (ECF Nos. 9, 12, 13.) These Motions and Plaintiff's Application to Proceed *In Forma Pauperis* are presently before the Court.

3

## LEGAL STANDARD

### I.     *In Forma Pauperis* Screening

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe pro se pleadings, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### II.    Motion to Dismiss under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a Defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds.

*Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891). Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

## III.  Motion to Dismiss under Rule 12(b)(6)

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Third, the court must determine whether the facts "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563 (quoting *Iqbal*, 556 U.S. at 679); *see also Fowler*, 578 F.3d at 211.

5

## DISCUSSION

I.      **Motion to Refund Filing Fee**

Regarding Plaintiff's Motion to Refund the Filing Fee, the Judicial Conference of the

United States "has a longstanding policy prohibiting the refund of fees, with narrow exceptions,

e.g., when fees are collected without authority or as a result of administrative error on the part of

the clerk's office." *Rashada v. Gonzales*, 2007 WL 1795873, at *1 (N.D. Ohio June 20, 2007)

(quoting *Report of the Proceedings of the Judicial Conference of the United States*, Judicial

Conference of the United States 11 (Mar. 15, 2005)). The "Conference's current policy regarding

refunding filing fees, in effect since 1949, has been broadly interpreted to generally prohibit

refunds of fees due upon filing, even if a party filed the case in error, or the court dismissed the

case or proceeding." *Id.* (quoting Memorandum from the Admin. Office of the U.S. Courts to

Chief Judges, U.S. Dist. Courts (Apr. 7, 2006)).

Courts have concluded that filing fees are non-refundable even where plaintiffs

subsequently file applications to proceed *in forma pauperis*. *See, e.g.*, *Grindling v. Martone*,

2012 WL 4502954, at *1 (D. Haw. Sept. 28, 2012) (refusing to grant the plaintiff's motion for a

refund of the filing fee, even after granting the plaintiff's *in forma pauperis* application, once

plaintiff had already paid the filing fee); *cf. Thorpe v. Snyder Cty. Domestic Relations Section*,

2005 WL 1155011, at *1 (M.D. Pa. Apr. 29, 2005) (explaining that, "[u]nfortunately, no matter

the stage of the litigation, filing fees are not refundable," even if a plaintiff files an *in forma*

*pauperis* application);; *James v. Cropp*, 2012 WL 1669727, at *1 (W.D. Wash. Apr. 13, 2012)

(explaining that 28 U.S.C. § 1915, which governs proceedings *in forma pauperis*, "does not

provide any authority or mechanism for the Court to waive the payment of Plaintiff's filing fee").

Because Plaintiff's fees were not collected without authority or as a result of administrative

6

error, the Court cannot refund Plaintiff's fees. For these reasons, the Motion to Refund Filing Fee is denied.

## II.      Application to Proceed *In Forma Pauperis*

Plaintiff's Application to Proceed *In Forma Pauperis* indicates that Plaintiff's only source of income is a monthly Social Security payment of $814.00. (Appl. ¶¶ 1, 11, ECF No. 6.) Plaintiff further indicates that he has no employment, no spousal income, only $50.00 in cash, no money in bank accounts, and no assets. (*Id.* ¶¶ 2–5.) Meanwhile, Plaintiff's monthly expenses exceed $1,800.00. (*Id.* ¶ 8.) Based on this information, the Court grants Plaintiff's Application to Proceed *In Forma Pauperis*.

## III.     Motions to Dismiss

While ordinarily the Court must screen the Complaint upon granting an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(e)(2)(B), State Defendants and Defendant Greenblatt have already filed Motions to Dismiss. Because the standard of review under § 1915(e)(2)(B) is the same as the standard of review for a motion to dismiss, the Court will both assess the arguments presented in the Motions to Dismiss and conduct a *sua sponte* screening of any remaining claims.

A.      *State Defendants*

The Court will first review Plaintiff's allegations against State Defendants. Plaintiff alleges that Defendant State of New Jersey is liable "DUE TO EMPLOYEE ERROR, TO ENROLLED A PERSON IN A PROGRAM[] WHICH HE DID NOT COME TO A COURT ROOM TO SEE IF HE FALL UNDER SAID PROGRAM." (Compl. at 12.) Regarding Defendant Attorney General Grewal, Plaintiff asserts "YOUR OFFICE HAS THE FULL AUTHORITY TO SAY ENOUGH IS ENOUGH OF THIS CASE DUE TO I [have] BEEN

TRYING TO GET A FAIR COURT HEARING AND A **'TRIAL'** OF A **(STATE**

[]**ERROR)**WHICH I CAN PROVE." (*Id.*) As for Defendant Governor Murphy, Plaintiff states

"YOUR OFFICE HAS [a] FULL REPORT ON MY TRYING TO GET A FAIR COURT

HEARING . . . LETS **STOP** THE **(RACIAL []DISCRIMINATION ACT)** – THE PROPER

RESOLUTION SHOULD BE DONE BY YOUR OFFICE." (*Id.* at 13–14.) With regard to

Defendant Arnautovic, Plaintiff alleges that she knew Plaintiff's rights were being violated, and

that she was "PAID-TO DENY ALL BLACK AMERICAN[s] THEIR PROPER LEGAL

RIGHTS." (*Id.* at 15.) Additionally, Plaintiff asserts a number of violations by Defendant Judge

Snyder, including denying Plaintiff the opportunity to submit evidence, providing misleading

information regarding Megan's Law, failing to recuse himself on Plaintiff's appeal due to a

"cover-up," refusing to allow Plaintiff to testify, and making racist comments to Plaintiff. (*Id.* at

19–21.) Finally, as for Defendants Gahm, Petrone, and LaRue, Plaintiff asserts the following:

1. MR. JAMES R. GAHM, #485, BECOME **"LIABLE"** FOR WRITTEN
   COMPLAINT ON THE **"PLAINTIFF**" ON "ILLEGAL–CHARGE" G.P.S.
   "DEVICE" WITH DEPRIVE PLAINTIFF, OF HIS PRIVACY AND FREEDOM, IN
   SOCIALTY.
2. MS. DANA PETRONE ESQ. **(CAMDEN-COUNTY-PROSECUTOR)**
   ***MALICIOUS – PROSECUTION***
   HAD FULL KNOWLEDGE SAID INCIDENT HAD ABSOLUTELY NO-MERIT,
   FOR PROSECUTION. NO-VICTIM, NO-FUNDS, NO-INCIDENT . . .
   . . . .
6. MR. ANDREW LARUE, OFFICER NEW JERSEY STATE PAROLE, G.P.S.
   OFFICIAL WHO (FORCE) ALL THE ILLEGAL – ARREST MOVEMENT AND
   LOCATION ON (G.P.S. – DEVICE)

(Compl. at 46.) The Court finds that all State Defendants are entitled to immunity from

Plaintiff's claims in both their official and individual capacities.

       i.    <u>Sovereign Immunity</u>

Under the Eleventh Amendment, state governments and their subsidiary units are

8

immune from suit in federal court. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253–54 (3d Cir. 2010) (citing U.S. Const. amend. XI). "Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Id.* at 254 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, Plaintiff's claim against Defendant State of New Jersey is barred under the Eleventh Amendment. Additionally, to the extent that Plaintiff asserts claims against Defendants Governor Murphy, Attorney General Grewal, Judge Snyder, Petrone, Arnautovic, Gahm, and LaRue in their official capacities, these claims are also barred by the Eleventh Amendment.

ii.    <u>Absolute Immunity</u>

Plaintiff's claims against Defendant Judge Snyder are barred by absolute judicial immunity. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, "judicial immunity is not overcome by allegations of bad faith or malice." *Id.* (citations omitted). Judicial immunity is only overcome where the alleged action is (a) nonjudicial, or (b) "though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12 (citations omitted). "Whether an act by a judge is a judicial one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Plaintiff's allegations against Defendant Judge Snyder all involve actions taken in his judicial capacity while he presided over Plaintiff's criminal proceedings in New Jersey state court. Accordingly, Defendant Judge Snyder is entitled to absolute judicial immunity.

9

Furthermore, Defendant Petrone is entitled to absolute prosecutorial immunity. "[S]tate prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Id.* (quoting *Imbler*, 424 U.S. at 431). However, prosecutorial immunity does not extend to "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Plaintiff alleges that Defendant Petrone's prosecution of his SOMA violation was malicious because she knew that the case had no merit. (Compl. at 46.) Therefore, Plaintiff's claim addresses acts taken within Defendant Petrone's prosecutorial capacity, such that she is entitled to absolute prosecutorial immunity.

### iii. Qualified Immunity

Defendants Governor Murphy, Attorney General Grewal, Arnautovic, Gahm, and LaRue are also entitled to qualified immunity to the extent that Plaintiff intends to sue them in their individual capacities. Under the doctrine of qualified immunity, government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). District courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236. For a right to have been clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullinex v. Luna*, 136 S. Ct. 305, 308 (2015). "The inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Williams v. Sec'y of Pa. Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017).

Plaintiff's allegations against Defendants Governor Murphy, Attorney General Grewal, Gahm, and LaRue center on Plaintiff's parole violation and subsequent conviction for failure to abide by SOMA's GPS monitoring requirement. (Compl. at 12–14, 46.) Plaintiff's basis for asserting that his rights were violated is the decision in *Riley*, which held that SOMA's GPS monitoring requirement should not have applied retroactively. However, the New Jersey Supreme Court did not issue its opinion in *Riley* until 2014. Therefore, at the time of the alleged violations, Defendants were acting in accordance with the current state of the law. Additionally, Plaintiff's only allegation against Defendant Arnautovic appears to be that she represented Gahm, LaRue, and Petrone in Plaintiff's prior suit before Judge Hillman. (*Id.* at 15.) This claim contains no perceptible constitutional violation. For the foregoing reasons, Defendants Governor Murphy, Attorney General Grewal, Arnautovic, Gahm, and LaRue are entitled to qualified immunity.

B.    *Defendant Greenblatt*

The Complaint states that Defendant Greenblatt should be held liable for the actions of Judge Snyder because Judge Snyder currently works at Defendant Greenblatt. (Compl. at 19, 21.) However, Judge Snyder's alleged violations occurred prior to his employment at Defendant Greenblatt. Accordingly, Defendant Greenblatt cannot be held liable for those alleged violations.

Therefore, Plaintiff has failed to state a claim against Defendant Greenblatt, and Defendant Greenblatt's Motion to Dismiss is granted.

C.    *Remaining Defendants*

Although Defendants Ronald Berreman and Judge Hillman have not filed motions to dismiss, the Court must screen the claims against them pursuant to § 1915(e)(2)(B). According to the Complaint, "MR. RONALD BERREMAN NEW JERSEY STATE PAROLE, G.P.S. OFFICIAL WHO 'FORCE' ALL THE ILLEGAL-ARREST MOVEMENT AND LOCATION ON G.P.S. DEVICE." (Compl. at 46.) This claim is identical to the claim against Defendant LaRue. The Court finds that, for the same reason Defendant LaRue is entitled to sovereign immunity in his official capacity and qualified immunity in his individual capacity, Defendant Berreman is also entitled to sovereign and qualified immunity.

The Complaint also states allegations against Defendant Judge Hillman related to Plaintiff's prior civil suits. The Complaint alleges that Defendant Judge Hillman used racial slurs toward Plaintiff, refused to treat Plaintiff fairly due to "payments under the table," refused to see Plaintiff 700 times despite requests for a hearing from Plaintiff, intended to prolong Plaintiff's case, and failed to honor a default against the Lindenwood Police Department. (Compl. at 15–16.) These allegations all arise from Defendant Judge Hillman's judicial activities.[3] Therefore,

---

[3] Although Plaintiff alleges that Defendant Judge Snyder accepted payments under the table to rule against Plaintiff, this vague allegation, without more, is insufficient to overcome judicial immunity. *See Gochin v. Haaz*, 2017 WL 4475973, at *6 (E.D. Pa. May 10, 2017) ("Even Plaintiff's most serious allegation—that Judge Haaz accepted bribes from Mr. Troy to rule in his client's favor—would not deprive him of immunity"); *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985) ("It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity.").

for the same reason that Defendant Judge Snyder was entitled to absolute judicial immunity, Defendant Judge Hillman is also entitled to absolute judicial immunity.

Accordingly, the claims against Defendants Berreman and Judge Hillman are dismissed *sua sponte* pursuant to § 1915(e)(2)(B)(iii). Because these were the only remaining claims in the Complaint, the Complaint is dismissed in its entirety.

## IV.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be given freely. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). The district court may exercise its discretion to deny leave to amend the complaint, but it must provide a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

A review of Plaintiff's proposed Amended Complaint reveals that an amendment would be futile.[4] The proposed Amended Complaint does not assert any new claims against the present Defendants and does not cure any of the defects noted in this Opinion. State Defendants, Defendant Judge Hillman, and Defendant Berreman would still be immune from suit, and the proposed Amended Complaint fails to state a claim against Defendant Greenblatt.

The proposed Amended Complaint appears to attach two separate complaints against

---

[4] Plaintiff appears to have filed several Motions to Amend the Complaint. (*See* ECF Nos. 9, 12, 13.) However, upon review of these Motions, the second Motion (ECF No. 12) was an attempt to withdraw the first Motion (ECF No. 9), such that the Court will only consider the third Motion to Amend the Complaint filed on September 2, 2020 (ECF No. 13).

several individuals for claims unrelated to the present case. The first complaint alleges illegal

entry by officers of the Lindenwood Police Department on June 28, 2020. (Am. Compl. at 12–

20, ECF No. 13.) These defendants are wholly unrelated to the claims at issue, such that joinder

would be inappropriate. *See* Fed. R. Civ. P. 20(a)(2) (allowing joinder of a defendant only if the

claims against that defendant arise out of the same transaction or occurrence); *see also Baxter v.*

*Atl. Care Main Pomona Hops.*, 2015 WL 715012, at *2 (D.N.J. Feb. 19, 2015) (denying *pro se*

plaintiff's attempt to amend the complaint with unrelated claims and defendants based on Rule

20(a)(2)). Instead, Plaintiff's claims against the Lindenwood police officers should be filed as a

separate action. *See Baxter*, 2015 WL 715012, at *3 (noting that the proper procedure for raising

unrelated claims is by filing a new case).

The second complaint is photocopy of an amended complaint in one of Plaintiff's prior

cases against officials at South Woods State Prison. (Am. Compl. at 26–34; *see Edwards v.*

*Lanigan* et al., Civ. No. 13-214, ECF No. 83.) In that case, the Court ruled in favor of defendants

on all counts because Plaintiff failed to exhaust his administrative remedies pursuant to 42

U.S.C. § 1997e(a). *Edwards v. Lanigan*, 2018 WL 1981473 at *5 (D.N.J. Apr. 27, 2018).

Because Plaintiff's allegations in the second complaint are identical to those in *Edwards v.*

*Lanigan*, and Plaintiff has not indicated that he has taken any steps to exhaust his administrative

remedies since the prior ruling, the Court finds that Plaintiff's attempt to re-litigate those claims

now would be futile.

Accordingly, the Court denies Plaintiff's Motions for Leave to Amend the Complaint.

The Court further finds that any amendment of the Complaint would be futile, such that the

Complaint is dismissed with prejudice. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors*,

*Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that dismissal with prejudice is warranted where

granting leave to amend "would be inequitable or futile").

## **CONCLUSION**

For the foregoing reasons, the Motion to Refund the Filing Fee (ECF No. 5) is denied, the Application to Proceed *In Forma Pauperis* (ECF No. 6) is granted, the Motion to Dismiss filed by State Defendants (ECF No. 7) is granted, the Motion to Dismiss filed by Defendant Greenblatt (ECF No. 8) is granted, the claims against Defendants Berreman and Judge Hillman are dismissed *sua sponte*, the Motions for Leave to Amend the Complaint (ECF Nos. 9, 12, 13) are denied, and the Complaint is dismissed with prejudice in its entirety. An appropriate Order will follow.


Date: <u>September 21, 2020</u>                    <u>/s/ Anne E. Thompson</u>
                                                    ANNE E. THOMPSON, U.S.D.J.